# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

YA QIANG ZHANG, JUN LING ZHAO, HUI
MIN ZHAO, JING GUAN, HUI LIANG ZHAO
AND LI WENG,

Plaintiffs,

vs.

T & W RESTAURANT, INC. TRADING AS
SHUN LEE WEST, BIN WU, MICHAEL TONG
AND T & W PAYROLL SERVICES, INC.,

Defendants.

Civil Action No.:

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

Plaintiffs, YA QIANG ZHANG, JUN LING ZHAO, HUI MIN ZHAO, JING GUAN, HUI LIANG

ZHAO AND LI WENG, by and through their attorneys, HANG & ASSOCIATES, PLLC, as and

for cause of action against the Defendants T & W RESTAURANT, INC. TRADING AS SHUN

LEE WEST, BIN WU, MICHAEL TONG, T & W PAYROLL SERVICES, INC. allege upon

information and belief as follows:

## INTRODUCTION

1.      This action is brought by Plaintiffs, on behalf of themselves well as other employees

similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act,

("FLSA") 29 U.S.C. §§ 201 *et seq.*, and of New York Labor Law §§190 et seq. ("NYLL"), arising

from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed

widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to

pay their employees, including Plaintiffs, re-alleges and incorporates by reference all preceding

paragraphs as though fully set forth herein., compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek and spread of hours, as well as failing to provide their employees, including Plaintiffs, with wage notice at the time of hiring and wage statements.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs;

4.      Plaintiffs further allege pursuant to NYLL §190  et seq. and Title 12 of New York Codes, Rules and Regulations Part 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum  wages, (2)  unpaid  overtime compensation, (3) unpaid spread of hours compensation, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid  overtime, and unpaid spread of hours compensation  pursuant  to  the  NY Wage  Theft  Prevention  Act; (6) prejudgment and post-judgment interest; and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

5.       This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.    Plaintiff Ya Qiang Zhang (hereinafter "Zhang") is an individual who resides in Queens County, New York.

8.    Plaintiff Jun Ling Zhao (hereinafter "Zhao") is an individual who resides in Queens County, New York.

9.    Plaintiff Hui Min Zhao (hereinafter "Hui Min") is an individual who resides in Queens County, New York.

10.    Plaintiff Jing Guan (hereinafter "Guan") is an individual who resides in Queens County, New York.

11.    Plaintiff Hui Liang Zhao (hereinafter "Hui Liang") is an individual who resides in Queens County, New York.

12.    Plaintiff Li Weng (hereinafter "Weng") is an individual who resides in Queens County, New York.

13.    From in or around October 2016 to on or around March 24, 2019, Plaintiff Ya Qiang Zhang was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Zhang's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string beans, preparing sauce packages, dim sum packages, and rice and soup for delivery orders, supplementing the delivery boxes as well as packages to the shelves.

14.    From in or around July 2014 to on or around March 24, 2019, Plaintiff Jun Ling Zhao was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Zhao's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string

beans, preparing sauce packages, dim sum packages, and rice and soup for delivery orders, supplementing the delivery boxes as well as packages to the shelves.

15.    From in or around July 3, 2017 to on or around April 20, 2018, Plaintiff Hui Min Zhao was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Hui Min's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string beans, preparing sauce packages, dim sum packages, and rice and soup for delivery orders.

16.    From in or around May 1, 2008 to on or around March 24, 2019, Plaintiff Jing Guan was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Guan's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string beans, preparing sauce packages, dim sum packages, and rice and soup for delivery orders, supplementing the delivery boxes as well as packages to the shelves.

17.    From in or around January 25, 2016 to on or around April 30, 2018, Plaintiff Hui Liang Zhao was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Hui Liang's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string beans, preparing sauce packages, dim sum packages, and rice and soup for delivery orders.

18.    From in or around October 2015 to on or around March 24, 2018, Plaintiff was employed as a deliver person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023. Plaintiff Weng's daily duties include delivering food with their own tools and doing other side works including typing the credit information to credit card machine, peeling string beans,

preparing sauce packages, dim sum packages, and rice and soup for delivery orders, supplementing the delivery boxes as well as packages to the shelves.

## **DEFENDANTS**

### *Corporate Defendants*

19.    Defendant T & W Restaurant, Inc. trading as Shun Lee West (hereinafter "Shun Lee West") is a corporation incorporated under the laws of New York and has its registered office at 43 West 65th Street, New York, NY 10023.

20.    Upon information and belief, Shun Lee West has about over 100 employees.

21.    Upon information and belief, Shun Lee West at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

22.    Upon information and belief, Shun Lee West purchased, and handled goods moved in interstate commerce. For instance, Shun Lee West has employees who handled and worked on goods moved in commerce such as flour and food supplies.

23.    At all times relevant times, Shun Lee West was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

24.    Defendant T&W Payroll Services, Inc. (hereinafter "T&W Payroll Services") is a corporation incorporated under the laws of New York and has its registered office at 97 Tennyson Drive, Nanuet, NY 10950.

25.    Upon information and belief, T&W Payroll Services issues checks and paystubs to the employees of Shun Lee West.

26.    Upon information and belief, T&W Payroll Services at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars

($500,000) per year.

27.     Upon information and belief, T&W Payroll Services purchased, and handled goods moved in interstate commerce.

28.     At all times relevant times, T&W Payroll Services was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

***Owner/ Operator Defendants***

29.     Upon information and belief, before December 2015, Defendant Michael Tong (hereafter "Tong") is the owner, chief executive officer, and/or managing agent of Defendant Corporations and participated in the day-to-day operations of Defendant Corporations and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

30.     Upon information and belief, Defendant Tong determined the wages and compensation of the employees of Defendants, including Plaintiffs, and approved work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

31.     Upon information and belief, Defendant Tong hereafter "Tong") is the owner, chief executive officer, and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

32.     Upon information and belief, Defendant Tong determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established work schedules and work load

of the employees, maintained employee records, and had the authority to hire and fire employees.

33.    Upon information and belief, Defendant Tong determined the wages and compensation of the employees of Defendants, including Plaintiffs, and approved work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

34.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

35.    Upon information and belief, Defendant Michael Tong sold the business to Defendant Bin Wu on around December 2016.

36.    Upon information and belief, after January 2016, Defendant Bin Wu (hereafter "Wu") is the owner, chief executive officer, and/or managing agent of Defendant Corporations and participated in the day-to-day operations of Defendant Corporations and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

37.    Upon information and belief, Defendant Bin Wu determined the wages and compensation of the employees of Defendants, including Plaintiffs, and approved work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

38.    Upon information and belief, Defendant Bin Wu is the owner, chief executive officer, and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

39.    Upon information and belief, Defendant Wu determined the wages and compensation of

the employees of Defendants, including Plaintiffs, and established work schedules and work load

of the employees, maintained employee records, and had the authority to hire and fire employees.

40.     Upon information and belief, Defendant Wu determined the wages and compensation of

the employees of Defendants, including Plaintiffs, and approved work schedules and work load of

the employees, maintained employee records, and had the authority to hire and fire employees.

41.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or

conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

42.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt

employees who have been or were employed by the Defendants at their restaurant locations for up

to the last three (3) years, through entry of judgment in this case (the "Collective Action Period")

(the "Collective Action Members"). Upon information and belief, the Collection Action Members

are so numerous the joinder of all members is impracticable. The identity and precise number of

such persons are unknown, and the facts upon which the calculations of that number may be

ascertained are presently within the sole control of the Defendants. Upon information and belief,

there are more than 100 Collective Action members, who have worked for or have continued to

work for the Defendants during the Collective Action Period, most of whom would not likely file

individual suits because they fear retaliation, lack adequate financial resources, access to attorneys,

or knowledge of their claims. Therefore, Plaintiffs submits that this case should be certified as a

collection action under the FLSA, 29 U.S.C. §216(b).

43.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members,

and have retained counsel that is experienced and competent in the field of employment law and

class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those

members of this collective action.

44.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

45.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

46.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

47.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation

that would preclude its maintenance as a collective action.

48.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ALLEGATIONS

49.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

50.    Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since past six years to the entry of judgment in this case (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid wages and overtime wages in violation of the New York Labor Law (the "Class").

51.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently wihin the sole control of the Defendants, upon information and belief, there are in excess of one hundred (100) members of the Class during the Class Period.

52.    The Claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other availble methods for the fair and efficient adjudication of the controversy-particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

53.    Plaintiffs have commited themselves to purusing this action and they have retained competent counsel experienced in employment law and class action litigation.

54.     Plaintiffs have the same interests in this matter as all other memebers of the class and Plaintiff's claims are typical of the Class.

55.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.  Whether the Defendants employed the Class Action members within the meaning of the New York Labor Law;

    b.  Whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the members of the Class;

    c.  What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d.  Whether Defendants failed to pay the Class wages for all hours worked as well as overtime compensation for hours worked in excess of forty hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

    e.  Whether Defendants' violations of the New York Labor Law are willful as that term is used within the context of the New York Labor Law;

    f.  Whether Defendants are liablt for all damages claimed hereunder, includinig but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees;

    g.  Whether Defendants should be enjoined from such violations of the New York Labor Law in the future;

    h.  Whether Defendants failed to pay Plaintiffs and the members of the Class an additional hour of pay for each hour worked in excess of ten hours in one day and an additional hour of pay for each split worked in a day; and

      i.   Whether Defendants faile to provide Plaintiffs with written statements of their wages, listing the dates of work covered by the payment of wages, the rate of pay and the basis thereof as required by New York Labor Law, § 195(3).

## STATEMENT OF FACTS

56.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

57.    Defendants knew that the nonpayment of minimum wage, overtime pay, spread of hours, failure to provide the required wage notice at the time of hiring, that the failure to provide the required wage statement with every payment of wages, would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

***Plaintiff Ya Qiang Zhang***

58.    From in or around October 2016 to on or around March 24, 2019, Plaintiff Ya Qiang Zhang was employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

59.    Upon information and belief, Defendant Bin Wu, known as "Boss" to Plaintiff, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

60.    Defendant Bin Wu hired Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Ya Qiang Zhang.

61.    Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Ya Qiang Zhang and methods of payment.

62.     Defendant Bin Wu hired Long Fa Yu as a manager, who handled wage payments to Plaintiff Ya Qiang Zhang and maintained his employment records.

63.     Plaintiff Ya Qiang Zhang was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

64.     From approximately October 2016 to in or around April 2018, Plaintiff Ya Qiang Zhang worked five days per week with Tuesday and Thursday off. During the week, there are two days he worked from 2:30 pm to 9:30 pm without a break, two days he worked from 4:30 pm to 10:30 pm without a break, and one day he worked from 5:30 to 11:00 pm without a break. Sometimes Plaintiff Zhang took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Zhang worked about thirty-three and a half (33.5) hours per week in average in the stated period.

65.     From approximately May 2018 to in or around March 2019, Plaintiff Ya Qiang Zhang worked five days per week with Tuesday and Thursday off. On Monday, he worked from 4:00 pm to 9:30 pm without a break. On Wednesday, Thursday and Friday, he worked from 4:00 pm to 10:30 pm without a break. On Sunday, he worked from 1:30 pm to 9:30 pm. Sometimes Plaintiff Zhang took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Zhang worked about thirty-four (34) hours per week in average.

66.     During all relevant employment period, Plaintiff Zhang was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce

packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplied, and other things required.

67.      During all relevant employment period, it took approximately two hours per day for Plaintiff Zhang to complete all the side work assigned. Plaintiff Zhang was required to arrive thirty minutes earlier to do the side work before he punched the machine.

68.      Throughout his employment with Defendants, Plaintiff Zhang was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

69.      Throughout their employment with Defendants, Plaintiff Zhang was not overtime-exempt under federal and state laws.

70.      Defendants did not provide Plaintiff Zhang with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were thus inaccurate.

71.      Throughout his employment with Defendants, Plaintiff Zhang was required to use his own tools of trade. Plaintiff Zhang brought two electric bicycles to perform his job, one for $1,600 and the other for $700. Plaintiff Zhang also spent $500 for the battery of bicycle per year. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Zhang spent $7 per order for taxi fees, which happened about two times per month.

72.      Throughout his employment with Defendants, Plaintiff Zhang was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Zhang was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent

$10 per week for the uniforms' laundry fees.

**Plaintiff Jun Ling Zhao**

73.    From in or around July 2014 to on or around March 24, 2019, Plaintiff Jun Ling Zhao was employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

74.    Upon information and belief, from around July 2014 to around December 2015, Defendant Michael Tong, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

75.    Defendant Michael Tong hired Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Jun Ling Zhao.

76.    Defendant Michael Tong, as the shareholder determined the rates of compensation of Plaintiff Jun Ling Zhao and methods of payment.

77.    Defendant Michael Tong hired Long Fa Yu as a manager, who handled wage payments to Plaintiff Jun Ling Zhao and maintained his employment records.

78.    Plaintiff Jun Ling Zhao was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

79.    Upon information and belief, from around January 2016 to around March 2019, Defendant Bin Wu, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading

as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

80.     Defendant Bin Wu kept Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Jun Ling Zhao.

81.     Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Jun Ling Zhao and methods of payment.

82.     Defendant Bin Wu kept Long Fa Yu as a manager, who handled wage payments to Plaintiff Jun Ling Zhao and maintained his employment records.

83.     Plaintiff Jun Ling Zhao was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

84.     From approximately July 2014 to December 2015, Plaintiff Jun Ling Zhao worked five days per week with Thursday and Friday off. On Tuesday and Sunday, Plaintiff Zhao worked from 10:00 am to 9:30 pm without a break. On Monday, Wednesday and Saturday, Plaintiff Zhao worked from 4:00 pm to 10:30 pm without a break. Sometimes Plaintiff Zhao took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Zhao worked about forty-three and a half (43.5) hours per week in average in the stated period. Plaintiff Zhao is entitled to the spread of hours for shifts that last over 10 hours per day.

85.     On approximately the January 2016, Defendants launched a policy to close the store during

2:30 pm to 4:30 pm but required all delivery people got back early to complete their side work.

86.    From approximately January 2016 to in or around March 2019, Plaintiff Jun Ling Zhao worked five days per week with Thursday and Friday off. On Tuesday and Sunday, Plaintiff Zhao worked from 10:00 am to 9:30 pm with two-hour break but was required to come back at least fifteen minute earlier. On Monday, Wednesday and Saturday, Plaintiff Zhao worked from 4:00 pm to 10:30 pm without a break. Sometimes Plaintiff Zhao took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Zhao worked about thirty-nine (39) hours per week in average in the stated period. Plaintiff Zhao is entitled to the spread of hours premium for shifts that last over 10 hours per day.

87.    During all relevant employment period, Plaintiff Zhao was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplies, and other things required.

88.    During all relevant employment period, it took approximately two hours per day for Plaintiff Zhao to complete all the side work assigned. Plaintiff Zhao was required to arrive thirty minutes earlier to do the side work before his punched the machine.

89.    Throughout his employment with Defendants, Plaintiff Zhao was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

90.    Throughout their employment with Defendants, Plaintiff Zhao was not overtime-exempt under federal and state laws.

91.    Defendants did not provide Plaintiff Zhao with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were

thus inaccurate.

92.     Throughout his employment with Defendants, Plaintiff Zhao was required to use his own tools of trade. He brought two bicycles to perform his job, each for $200. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Zhao spent $7 per order for taxi fees, which happened about two times per month.

93.     Throughout his employment with Defendants, Plaintiff Zhao was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Zhao was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent $10 per week for the uniforms' laundry fees.

***Plaintiff Ming Hui Zhao***

94.     From in or around July 3, 2017 to on or around April 20, 2018, Plaintiff Ming Hui Zhao was employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

95.     Upon information and belief, Defendant Bin Wu, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

96.     Defendant Bin Wu kept Long Fa Yu as a manager, who controlled and determined the

work schedule of Plaintiff Ming Hui Zhao.

97.     Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Ming Hui Zhao and methods of payment.

98.     Defendant Bin Wu kept Long Fa Yu as a manager, who handled wage payments to Plaintiff Ming Hui Zhao and maintained his employment records.

99.     Plaintiff Ming Hui Zhao was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

100.    From approximately July 2017 to April 2018, Plaintiff Ming Hui Zhao worked five days per week with Monday and Thursday off. During the week he worked, there were three days that Plaintiff Ming Hui worked from 2:30 am to 9:30 pm without a break, and there were two days that he worked 4:00 pm to 10:30 pm without a break. Sometimes Plaintiff Ming Hui took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Ming Hui worked about thirty-five (35) hours per week in average in the stated period. Plaintiff Ming Hui is entitled to the spread of hours for shifts that last over 10 hours per day.

101.    During all relevant employment period, Plaintiff Ming Hui was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplies, and other things required.

102.    During all relevant employment period, it took approximately two hours per day for

Plaintiff Ming Hui to complete all the side work assigned. Plaintiff Ming Hui was required to arrive thirty minutes earlier to do the side work before his punched the machine.

103.    Throughout his employment with Defendants, Plaintiff Ming Hui was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

104.    Throughout their employment with Defendants, Plaintiff Ming Hui was not overtime-exempt under federal and state laws.

105.    Defendants did not provide Plaintiff Ming Hui with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were thus inaccurate.

106.    Throughout his employment with Defendants, Plaintiff Ming Hui was required to use his own tools of trade. He brought an electric bicycle to perform his job for $1,750. Plaintiff Ming Hui also spent $500 for the battery of bicycle per year. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Ming Hui spent $7 per order for taxi fees, which happened about two times per month.

107.    Throughout his employment with Defendants, Plaintiff Ming Hui was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Ming Hui was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent $10 per week for the uniforms' laundry fees.

***Plaintiff Jing Guan***

108.    From in or around May 2008 to on or around March 24, 2019, Plaintiff Jing Guan was

employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

109.    Upon information and belief, from around July 2014 to around December 2015, Defendant Michael Tong, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

110.    Defendant Michael Tong hired Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Guan.

111.    Defendant Michael Tong, as the shareholder determined the rates of compensation of Plaintiff Guan and methods of payment.

112.    Defendant Michael Tong hired Long Fa Yu as a manager, who handled wage payments to Plaintiff Guan and maintained his employment records.

113.    Plaintiff Guan was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

114.    Upon information and belief, from around January 2016 to around March 2019, Defendant Bin Wu, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of

payment, handling payrolls, and maintaining employee records.

115.    Defendant Bin Wu kept Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Jing Guan.

116.    Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Jing Guan and methods of payment.

117.    Defendant Bin Wu kept Long Fa Yu as a manager, who handled wage payments to Plaintiff Jing Guan and maintained his employment records.

118.    Plaintiff Jing Guan was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

119.    From approximately July 2008 to December 2015, Plaintiff Jing Guan worked five days per week with Monday and Thursday off. On Tuesday Wednesday, Friday and Saturday, Plaintiff Guan worked from 4:00 pm to 10:30 pm without a break. On Sunday, Plaintiff Guan worked from 2:30 am to 9:30 pm without a break. Sometimes Plaintiff Guan took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Guan worked about thirty-four (34) hours per week in average in the stated period.

120.    From approximately January 2016 to March 2018, Plaintiff Jing Guan worked five days per week with Monday and Thursday off. On Tuesday and Wednesday, Plaintiff Guan worked from 4:00 am to 10:30 pm without a break. On Friday, Plaintiff Guan worked from 5:30 pm to 11:30 pm without a break. On Saturday, Plaintiff Guan worked from 10:00 am to 9:30 pm with a two-hour break (but was required to be back at least fifteen minutes earlier). On Sunday, Plaintiff Guan worked from 2:30 am to 9:30 pm without a break. Sometimes Plaintiff Guan took off one

hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Guan worked about thirty-seven (37) hours per week in average in the stated period. Plaintiff Guan is entitled to the spread of hours for shifts that last over 10 hours per day.

121.    From approximately April 2018 to March 2019, Plaintiff Jing Guan worked five days per week with Monday and Thursday off. On Tuesday, Wednesday and Friday, Plaintiff Guan worked from 4:00 pm to 10:30 pm without a break. On Saturday, Plaintiff Guan worked from 10:00 am to 9:30 pm with an two-hour break (but was required to be back at least fifteen minutes earlier). On Sunday, Plaintiff Guan worked from 2:30 am to 9:30 pm without a break. Sometimes Plaintiff Guan took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Guan worked about thirty-nine (39) hours per week in average in the stated period.

122.    During all relevant employment period, Plaintiff Guan was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplies, and other things required.

123.    During all relevant employment period, it took approximately two hours per day for Plaintiff Guan to complete all the side work assigned. Plaintiff Guan was required to arrive thirty minutes earlier to do the side work before he punched in. For the days he worked from 10:00 am, he had to arrive one hour earlier to do the side work before he punched in.

124.    Throughout his employment with Defendants, Plaintiff Guan was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

125.    Throughout their employment with Defendants, Plaintiff Guan was not overtime-exempt under federal and state laws.

126.    Defendants did not provide Plaintiff Guan with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were thus inaccurate.

127.    Throughout his employment with Defendants, Plaintiff Guan was required to use his own tools of trade. He brought five electric bicycles to perform his job, each for $200. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Guan spent $7 per order for taxi fees, which happened about two times per month.

128.    Throughout his employment with Defendants, Plaintiff Guan was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Guan was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent $10 per week for the uniforms' laundry fees.

### Plaintiff Hui Liang Zhao

129.    From in or around January 25, 2016 to on or around April 30, 2018, Plaintiff Hui Liang Zhao was employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

130.    Upon information and belief, Defendant Bin Wu, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not

limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

131.    Defendant Bin Wu kept Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Hui Liang Zhao.

132.    Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Hui Liang Zhao and methods of payment.

133.    Defendant Bin Wu kept Long Fa Yu as a manager, who handled wage payments to Plaintiff Hui Liang Zhao and maintained his employment records.

134.    Plaintiff Hui Liang Zhao was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

135.    From approximately January 25, 2016 to April 30, 2018, Plaintiff Hui Liang Zhao worked five days per week with Monday and Thursday off. On Tuesday and Friday, he worked from 4:00 to 9: 30 pm. On Wednesday and Saturday, he worked from 5:30 pm to 11:00 pm. On Sunday, he worked from 3:00 pm to 11:30 pm. He worked without break. Sometimes Plaintiff Hui Liang took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Hui Liang worked about thirty-one and a half (31.5) hours per week in average in the stated period. Plaintiff Hui Liang is entitled to the spread of hours for shifts that last over 10 hours per day.

136.    During all relevant employment period, Plaintiff Hui Liang was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit

information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplies, and other things required.

137.    During all relevant employment period, it took approximately two hours per day for Plaintiff Hui Liang to complete all the side work assigned. Plaintiff Hui Liang was required to arrive thirty minutes earlier to do the side work before his punched the machine.

138.    Throughout his employment with Defendants, Plaintiff Ming Hui was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

139.    Throughout their employment with Defendants, Plaintiff Ming Hui was not overtime-exempt under federal and state laws.

140.    Defendants did not provide Plaintiff Ming Hui with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were thus inaccurate.

141.    Throughout his employment with Defendants, Plaintiff Ming Hui was required to use his own tools of trade. He brought an electric bicycle to perform his job for $1,550. Plaintiff Ming Hui also spent $500 for the battery of bicycle per year. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Ming Hui spent $7 per order for taxi fees, which happened about two times per month.

142.    Throughout his employment with Defendants, Plaintiff Ming Hui was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Ming Hui was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and

bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent $10 per week for the uniforms' laundry fees.

***Plaintiff Li Weng***

143.    From in or around October 2015 to on or around March 2018, Plaintiff Li Weng was employed as a delivery person in Defendants' restaurant located at 43 West 65th Street, New York, NY 10023.

144.    Upon information and belief, from around January 2016 to around March 2019, Defendant Bin Wu, known as "Boss" to Plaintiffs, is the owner/shareholder of T & W Restaurant, Inc. trading as Shun Lee West and maintains active operational control over T & W Restaurant, Inc. trading as Shun Lee West, including but not limited to hiring and firing employees, supervising and controlling the managers and employees, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

145.    Defendant Bin Wu kept Long Fa Yu as a manager, who controlled and determined the work schedule of Plaintiff Li Weng.

146.    Defendant Bin Wu, as the shareholder determined the rates of compensation of Plaintiff Li Weng and methods of payment.

147.    Defendant Bin Wu kept Long Fa Yu as a manager, who handled wage payments to Plaintiff Li Weng and maintained his employment records.

148.    Plaintiff Li Weng was not provided a written wage notice, in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

149.    From approximately in or around October 2015 to on or around March 2018, Plaintiff Li

Weng worked five days per week with Tuesday and Saturday off, sometimes with Tuesday and Friday off. On Monday, Wednesday, Thursday and Friday if Plaintiff worked, he worked from 10:00 am to 9:30 pm with a two-hour break (but was required to be back at least fifteen minutes earlier). On Sunday, Plaintiff Weng worked from 2:30 pm to 10:30 pm without a break. Sometimes Plaintiff Weng took off one hour late because he was required to deliver late night orders and could not get back before the shift ended. Therefore, Plaintiff Weng worked about forty-seven (47) hours per week in average in the stated period. Plaintiff Weng is entitled to the spread of hours for shifts that last over 10 hours per day.

150.    During all relevant employment period, Plaintiff Weng was required to complete not only the delivery job but also other side work, including but not limited to: 1) typing the credit information into credit card machine for orders, 2) peeling string beans, 3) preparing sauce packages, dim sum packages, and rice as well as soup for delivery orders, 4) supplementing the delivery supplies, and other things required.

151.    During all relevant employment period, it took approximately two hours per day for Plaintiff Weng to complete all the side work assigned. Plaintiff Weng was required to arrive thirty minutes earlier to do the side work before his punched the machine.

152.    Throughout his employment with Defendants, Plaintiff Weng was paid at the tipped wage employer rate per hour in despite of the two-hour side work he performed every day.

153.    Throughout their employment with Defendants, Plaintiff Weng was not overtime-exempt under federal and state laws.

154.    Defendants did not provide Plaintiff Weng with a correct wage statement with every wage payment. The paystubs Defendants provided were not subject to the real time punched and were thus inaccurate.

155.    Throughout his employment with Defendants, Plaintiff Weng was required to use his own tools of trade. He brought two bicycles to perform his job, each for $200. When Defendants took catering orders (also called "big orders"), Plaintiffs were required to deliver the "big order" by taxi with their own expenses. Plaintiff Weng spent $7 per order for taxi fees, which happened about two times per month.

156.    Throughout his employment with Defendants, Plaintiff Weng was required to comply with Defendants' dressing code with his own expenses. Defendants provided a uniform jacket though, Plaintiff Weng was required to wear black pants, socks and shoes to perform the job. He spent $30 per pair of pants and bought two pairs per year. He spent $55 per pair of shoes and bought two pairs per year. He spent $20 per dozens of socks and bought four dozen per year. He also spent $10 per week for the uniforms' laundry fees.

## STATEMENT OF CLAIMS

### COUNT I
**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of Plaintiffs and the FLSA Collective]**

157.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.    At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §206(a) and §207(a). Further, Plaintiffs is covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

159.    At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

160.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

161.    The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

162.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the collective action members, for some or all of the hours they worked.

163.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

164.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff Zhang and Collective Action members.

## COUNT II

### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiffs]

165.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

166.    At all relevant times, Plaintiffs was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

167.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

168.    Defendants knowingly and willfully violated Plaintiff Zhang's rights by failing to pay their minimum wages in the lawful amount for hours worked.

## COUNT III

### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff Guan and Plaintiff Zhao and the FLSA Collective]

169.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

170.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

171.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

172.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime premiums violated the FLSA.

173.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek,  which  violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

174.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

175.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

176.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV

### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiffs]

177.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

178.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

179.    Defendants' failure to pay Plaintiffs their overtime premiums violated the NYLL.

180.    Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT V

### [Violation of New York Labor Law—Spread of Hours
### Brought on behalf of Plaintiff Zhao, Plaintiff Guan and Plaintiff Weng]

181.    The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 NYCRR

§ 137-1.7, 12 NYCRR 146-1.6 (effective 1/1/2011, formerly 12 NYCRR § 137-1.7), New York State Department of Labor Regulations § 137-1.7 provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in which the employee's spread of hours exceeds ten. This "spread of hours" regulation is applicable even if there is a split shift.

182.    Throughout the employment, Plaintiffs Zhao and Plaintiff Weng routinely worked a "spread of hours" of at least 11 hours per day.

183.    Despite the fact that Plaintiffs routinely worked a "spread of hours" greater than ten hours per day during certain employment period with Defendants, Defendants did not pay Plaintiffs any additional compensation as required by the regulations.

184.    Defendants' failure to pay spread of hours compensation was willful and intentional.


## COUNT VI

### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on Behalf of Plaintiffs]

185.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

186.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of

the employer.  NYLL §195-1(a).

187.    Defendants intentionally failed to provide notice to employees in violation of New York

Labor Law § 195, which requires all employers to provide written notice in the employee's primary

language about the terms and conditions of employment related to rate of pay, regular pay cycle

and rate of overtime on his or her first day of employment.

188.    Defendants not only did not provide notice to each employee at Time of Hire but also failed

to provide notice to Plaintiffs thereafter.

189.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover

from Defendants, jointly and severally, $50 for each workday that the violation occurred or

continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York

Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII

### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on Behalf of Plaintiffs]

190.    Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

191.    The NYLL and supporting regulations require employers to provide detailed paystub

information to employees every payday. NYLL §195-1(d).

192.    Defendants have failed to make a good faith effort to comply with the New York Labor

Law with respect to compensation of each Plaintiff and did not provide the paystub on or after

each Plaintiff's payday.

193.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover

from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for

each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VII

### [Failure of Reimburse for Expenses relating to Tools of the Trade]

194.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members repeats and re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

195.    Defendants required Plaintiff to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

196.    At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiff for expenses incurred in relation to tools of the trade used by Plaintiffs in order to make deliveries for the Defendants' business. Such tools of the trade include but are not limited to bicycles, wearing and its laundry fees as alleged above.

197.    Defendants knew of and/or showed a willful disregard for the provision of the FLSA as evidenced by their failure to reimburse Plaintiff for expenses incurred in  relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.


## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and class-action Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

a)  Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)  Certification of this case as a collective action pursuant to FLSA;

c)  Certification of this case as a class action pursuant to FLSA;

d)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

e)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

f)  An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

g)  Award Plaintiffs unpaid wages and unpaid overtime due under the FLSA and the New York Labor Law;

h)  Award Plaintiffs "spread of hours" pay in the amount of one times the then-applicable

minimum wage rate for each day Plaintiffs worked 10 or more hours in a workday

pursuant to New York Labor Law and its regulations;

i)      An award of costs and expenses of this action together with reasonable attorneys' and

expert fees pursuant to 29 U.S.C. §216(b) and NYLL;

j)      The cost and disbursements of this action;

k)      An award of prejudgment and post-judgment fees; and

l)      Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Respectfully Submitted,

HANG & ASSOCIATES, PLLC

Dated:      April 7, 2019
Flushing,   New York                        _/s/ Jian Hang_
                                            Jian Hang, Esq.
                                            _Attorney for Plaintiffss_
                                            Hang & Associates, PLLC
                                            136-20 38th Avenue
                                            Suite 10G
                                            Flushing, NY 11354
                                            Tel: (718) 353-8588
                                            Fax: (718) 353-6288
                                            Email: jhang@hanglaw.com

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T & W Restaurant, Inc., T & W Payroll Services, Inc., Michael Tong, Bin Wu, Longfa Yu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Zhao Hui Liang

Full Legal Name (Print)

Signature

4/1/2019

Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T & W Restaurant, Inc., T & W Payroll Services, Inc., Michael Tong, Bin Wu, Longfa Yu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

JING S GUAN
_____
Full Legal Name (Print)

JING S GUAN
_____
Signature

3-27-2019
_____
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T & W Restaurant, Inc., T & W Payroll Services, Inc., Michael Tong, Bin Wu, Longfa Yu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yaqiang, Zhang
Full Legal Name (Print)

Yaqiang, Zhang
Signature

3/27/19
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T & W Restaurant, Inc., T & W Payroll Services, Inc., Michael Tong, Bin Wu, Longfa Yu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Zhao hui min
_____
Full Legal Name (Print)

_____
Signature

3/28/2019
_____
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T & W Restaurant, Inc., T & W Payroll Services, Inc., Michael Tong, Bin Wu, Longfa Yu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_____
Full Legal Name (Print)

_____
Signature

_____
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by T&W Restaurant, Inc.. T&W Payroll Services Inc, Michael Tong, Bin Wu, Longfa Yu and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Li Weng_
Full Legal Name (Print)

_Li Weng_
Signature

_4/1/2019_
Date